IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HESHAN JIAHOJIA SANITARY
WARE INDUSTRY, CO., LTD.,

    Plaintiff,

        v.                                    Civil Action No. 3:25cv845

THE UNINCORPORATED
ASSOCIATIONS IDENTIFIED
IN SCHEDULE A,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the following four motions:

1. Plaintiff Heshan Jiahojia Sanitary Ware Industry, Co., Ltd.'s *Ex Parte* Motion for Temporary Restraining Order and Asset Restraining Order (the "TRO Motion"), (ECF No. 5);

2. Plaintiff's *Ex Parte* Motion for Expedited Discovery (the "Motion for Expedited Discovery"), (ECF No. 7);

3. Plaintiff's *Ex Parte* Motion for Service of the Complaint by Email (the "Motion for Service by Email"); and,

4. Plaintiff's Motion to Sever Defendant No. 2 Forious-USA (the "Motion to Sever"), (ECF No. 31).

For the reasons articulated below, the Court will deny the TRO Motion, (ECF No. 5), the Motion for Expedited Discovery, (ECF No. 7), and the Motion to Sever, (ECF No. 31). The Court will grant the Motion for Service by Email. (ECF No. 9.) The Motions Hearing scheduled for October 28, 2025 will be canceled.

## I. Factual and Procedural Background

### A. Factual Background

Plaintiff owns two design patents for water faucets. (ECF No. 1 ¶¶ 11–14; ECF No. 1-3; ECF No. 1-4.) The patents-in-suit protect the ornamental designs of the faucets, (ECF No. 1 ¶ 22), including their "distinctive . . . waterfall designs," (ECF No. 1 ¶ 21). Plaintiff's commercial embodiments of its patents are sold through its seller store and authorized retail store on Amazon.com. (ECF No. 1 ¶¶ 16.) Defendants are 23 unincorporated associations "believed to reside in foreign jurisdictions, namely China."[1] (ECF No. 1 ¶ 7.) Plaintiff alleges that Defendants import, promote, advertise, market, distribute, offer for sale, and sell "counterfeit" faucets on Amazon.com, Wayfair.com, and Temu.com in a manner that infringes on Plaintiff's patents. (ECF No. 1 ¶¶ 25, 27.)

### B. Procedural Background

On October 14, 2025, Plaintiff filed its Verified Complaint. (ECF No. 1.) The same day, Plaintiff filed the TRO Motion, (ECF No. 5), the Motion for Expedited Discovery, (ECF No. 7), and the Motion for Service of the Complaint by Email, (ECF No. 9).

On October 17, 2025, Defendant Wenzhou Furuisi Jiancai Youxian Gongsi ("Forious") filed a Motion to Dismiss for Misjoinder. (ECF No. 16.) On October 23, 2025, Plaintiff opposed severing Forious in part because Forious sells products in violation of Plaintiffs' patents, as do all twenty-three other defendants.[2] (ECF No 26, at 6.) Forious' reply is due October 27, 2025. (*See* ECF No. 18, at 1.)

---

[1] Defendants are identified in Schedule A, which accompanies Plaintiff's Verified Complaint. (ECF No. 1-2.)

[2] Forious is the only Defendant alleged to sell products in violation of both of Plaintiff's patents, but it is one of twenty-one defendants alleged to sell products in violation of Patent No.

2

On October 23, 2025, Plaintiff withdrew its TRO Motion as to Forious. (ECF No. 28, at 1.)[3]

## II. Motion for Temporary Restraining Order

In its TRO Motion, Plaintiff seeks an *ex parte* temporary restraining order "freezing all activity associated with the sale of accused faucets by the Defendants" and "enjoin[ing] the transfer of any monies associated with sales of infringing faucets held in Defendants' online marketplace merchant accounts until further ordered by this Court." (ECF No. 5, at 1.) Plaintiff now purports to exempt Forious from the entities it seeks to enjoin. (ECF No. 28.)

Federal Rule of Civil Procedure 65(b) sets forth the requirements for obtaining an *ex parte* temporary restraining order. Rule 65(b) states that the Court may issue a temporary

---

D967,340, and one of three defendants alleged to sell products in violation of Patent No. D983,326. (*See* ECF No. 1-2.)

[3] Finally, on October 24, 2025, Plaintiff filed the Motion to Sever. (ECF No. 31.) Echoing its earlier willingness "to carve out Forious into a separate case . . . if that is deemed to increase judicial economy," (ECF No. 26, at 7), Plaintiff moves to sever Forious because it "has withdrawn Forious from the . . . Temporary Restraining Order and based upon Forious' assertion of misjoinder in this action," (ECF No. 31, at 1).

The Court sees nothing efficient in a party proposing potentially different positions—without withdrawing one of them—one day apart from the other. (ECF Nos. 26, 31.) More to the point, Plaintiff's Motion violates Eastern District of Virginia Local Rule 7(F)(1) and (2). Rule 7(F)(1) provides that "[a]ll motions, unless otherwise directed by the Court and except as noted . . . in subsection 7(F)(2), shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies." E.D. Va. L.R. 7(F)(1). Rule 7(F)(2) carves out three motions that need not be accompanied by a brief: "motions for (a) a more definite statement; (b) an extension of time to respond to pleadings, unless the time has already expired; and (c) a default judgment." E.D. Va. L.R. 7(F)(2).

Plaintiff's Motion to Sever is not accompanied by a brief. It does not fall into one of Rule 7(F)(2)'s exceptions to Rule 7(F)(1)'s general rule, nor has the Court permitted or ordered otherwise under Rule 7(F)(1) or (2). It therefore violates this District's local rules. Accordingly, the Court will deny Plaintiff's Motion to Sever. (ECF No. 31.)

3

restraining order without written or oral notice to a party or its attorneys only if: (A) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (B) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Issuing a temporary restraining order without notice constitutes an extraordinary remedy. "'[T]he requirements of Rule 65(b)(1) are not merely technical niceties that a court may may easily disregard, but rather are crucial safeguards of due process.'" *Defend Arlington v. United States*, No. 1:23-cv-1730 (RDA), 2023 WL 8788956, at *5 (E.D. Va. Dec. 19, 2023) (quoting *Tchienkou v. Net Trust Mortg.*, No. 10-23, 2010 WL 2375882, at *1 (W.D. Va. June 9, 2010)). "'To ensure that the rights of all concerned are protected, Rule 65(b) prescribes certain safeguards for the issuance of temporary restraining orders that must be scrupulously honored.'" *McKnight v. Frederick Cnty. Dep't of Soc. Servs.*, No. 5:24-cv-00088, 2024 WL 4979276, at *2 (W.D. Va. Dec. 4, 2024) (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2952 (3d ed.)). "'Any temporary restraining order granted without notice must comply with the provisions of Rule 65(b) in order to assure the restrained party some measure of protection in lieu of receiving formal notice and the opportunity to participate in a hearing.'" *Id.* (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.)).

Here, Plaintiff has not met the requirements set forth in the second Rule 65(b)(1) prong: "the movant's attorney certifies in writing any efforts made to give notice *and* the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B) (emphasis added). Plaintiff's counsel did not provide a separate written certification that articulates his efforts to give notice to Defendants and the reasons why notice should not be provided. Plaintiff's counsel did offer some

4

information in the memorandum[4] accompanying the TRO Motion about the risk of providing notice to Defendants before entry of a temporary restraining and asset freezing order—he suggests that without an *ex parte* temporary restraining order, "Defendants will have not only a strong incentive, but the opportunity to move any assets away from U.S.-based financial institutions outside the jurisdiction of this and other U.S. courts,"[5]—but this argument is directed at establishing the first of the two 65(b)(1) prongs regarding immediate and irreparable injury, loss, or damage if a temporary restraining order is not issued *ex parte*. (*See* ECF No. 6, at 7–8.) While it may be the case that Plaintiff's explanation as to why notice should not be required under 65(b)(1)(B) is the same, Plaintiff's counsel does not say so. Indeed, he does not even cite 65(b)(1)(B) in his memorandum.[6] (*See generally* ECF No. 6.)

Plaintiff's counsel also makes no reference in the memorandum to the second prong's additional requirement: that he certify "any efforts made to give notice" to Defendants. Fed. R.

---

[4] The Court assumes for the purposes of this Memorandum Opinion that the memorandum in support of the TRO Motion satisfies Rule 65(b)(1)(B)'s certification requirement, although some caselaw from within the jurisdiction of United States Court of Appeals for the Fourth Circuit suggests that it does not. *See Hynes Indus., Inc. v. Schletter, Inc.*, No. 1:18-cv-31, 2018 WL 3277552, at *1 (W.D.N.C. Feb. 13, 2018) (finding that a "most-thorough" memorandum of law did not satisfy Rule 65(B)(1)(b)'s certification requirement).

[5] Although the Court does not reach the merits of Plaintiff's argument in support of its TRO Motion, it notes that Plaintiff also argues that it is a "*virtual certainty* that if the Defendants learn about this action before the requested relief is granted, they will expeditiously transfer all funds from their online seller accounts, thereby disrupting the status quo and denying Plaintiff a means to collect upon any judgment it is likely to receive." (ECF No. 6, at 21–22 (emphasis added).) However, to date, one Defendant has filed a responsive pleading. (ECF No. 16.) Plaintiff has made no emergency motion seeking to enjoin any transfer of assets by that Defendant.

[6] The Advisory Committee Notes to Rule 65(b) emphasize that Rule 65(b)(1)(B)'s requirement that counsel certify why defendants should not be provided notice is "*in addition* to the requirement of an affidavit or verified complaint setting forth the facts as to the irreparable injury which would result before the opposition could be heard" under Rule 65(b)(1)(A). Committee Notes to Rule 65, 1966 Amendment, Subdivision (b) (emphasis added).

Civ. P. 65(b)(1)(B).[7] As courts in this district have routinely held, failure to comply with this requirement is grounds for denial of a temporary restraining order. *See JTH Tax, LLC v. Williams-Eton*, No. 2:20-cv-127 (AWA), 2020 WL 4708701, at *1 (E.D. Va. Apr. 27, 2020) (denying in part plaintiff's *ex parte* motion for a temporary restraining order and ordering service where plaintiff's counsel's declaration did not include certification of efforts made to give notice under Rule 65(b)(1)(B)); *Defend Arlington*, 2023 WL 8788956, at *4–5 (vacating temporary restraining order where plaintiff failed to satisfy Rule 65(b)(1)(B)'s requirements by certifying efforts made to give notice and the reasons why it should not be required).

For the foregoing reasons, because Plaintiff's TRO Motion does not comply with Rule 65(b), this Court cannot proceed *ex parte* with Plaintiff's Motion. The Court will deny Plaintiff's TRO Motion. (ECF No. 5.)

### III. Motion for Expedited Discovery

Plaintiff also moves this Court to conduct limited, expedited discovery. (ECF No. 7.) Specifically, Plaintiff seeks to conduct "expedited third-party discovery from Amazon.com, Temu.com, and Wayfair.com regarding the Defendants' true identity [sic], sales information, and the location and value of each of the Defendants' financial accounts within these online platforms." (ECF No. 8, at 2.) Plaintiff seeks this information to understand the "scope of [Defendants'] activities giving rise to this action[,]" protect "[its] rights, and obtain relief" (ECF No. 8, at 4.)

---

[7] The Advisory Committee Notes to Rule 65(b) again provide helpful context on the importance of this rule. "In view of the possibly drastic consequences of a temporary restraining order," the Advisory Committee warned that "the opposition should be heard, if feasible, before the order is granted," and that "informal notice . . . is to be preferred to no notice at all." Committee Notes to Rule 65, 1966 Amendment, Subdivision (b); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2952 (3d ed.).

District courts have "broad discretion" to supervise discovery. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). Federal Rule of Civil Procedure 26 generally prohibits discovery before the parties have conducted a Rule 26(f) discovery conference, although courts can order expedited discovery. Fed. R. Civ. P. 26(d)(1). Courts in the Eastern District of Virginia apply a modified preliminary injunction test to determine whether expedited discovery is warranted.[8] *See ForceX Inc. v. Tech. Fusion*, LLC, No. 4:11-cv-88 (TEM), 2011 WL 2560110, at *4–5 (E.D. Va. June 27, 2011). This test looks to whether the Plaintiff has made "a strong showing of merits and irreparable harm to the Plaintiff" in the absence of expedited discovery and proves justified by "the idea that granting court relief outside of the federal rules should be limited to unusual circumstances." *ForceX*, 2011 WL 2560110, at *5.

---

[8] Since the Supreme Court clarified the standard for preliminary injunctions in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), district courts have applied differing standards when considering whether to order early discovery. *See Kia Motors Am., Inc. v. Greenbrier GMC, Inc.*, No. 2:20-cv-428 (RCY), 2020 WL 8970813, at *2 (E.D. Va. Dec. 11, 2020) (discussing the differing standards applied to motions for expedited discovery post-*Winter*). While some courts apply a "reasonableness" or "good cause" test, others, including those in the Eastern District of Virginia, apply a modified preliminary injunction test. *Compare Teamworks Innovations, Inc. v. Starbucks Corp.*, 1:19-cv-240, 2020 WL 406360, at *3 (M.D.N.C. Jan. 24, 2020) (applying good cause standard to grant in part plaintiff's motion for expedited discovery), *with ForceX Inc. v. Tech. Fusion*, LLC, No. 4:11-cv-88 (TEM), 2011 WL 2560110, at *4–5 (E.D. Va. June 27, 2011) (finding the preliminary injunction standard most appropriate when considering an expedited discovery motion).

In the absence of any guidance from the Fourth Circuit as to the proper test for expedited discovery in the wake of *Winter*, this Court finds the preliminary injunction test a more demanding standard than the good cause test, and better aligns with the Supreme Court's emphasis that emergency relief should be granted in only unusual or extraordinary circumstances. *See ForceX Inc.*, 2011 WL 2560110, at *5 (holding same); *Winter*, 555 U.S. at 22 (holding that preliminary relief constitutes an "extraordinary remedy").

Plaintiff's Motion for Expedited Discovery is premature. The information Plaintiff seeks through expedited discovery appears necessary only had Plaintiff's TRO Motion been granted. The Court sees no reason, and Plaintiff provides no argument, as to why information about the Defendants' identities, sales information, and the location and value of each of the Defendants' financial accounts at Amazon, Temu, and Wayfair would be necessary in the absence of a Temporary Restraining Order. Because, as set out above, the Court will deny Plaintiff's TRO Motion, expedited discovery is not appropriate at this stage. The Court will deny Plaintiff's Motion for Expedited Discovery. (ECF No. 7.)

### IV. Motion for Service of Process by Email

Finally, Plaintiff asserts that electronic service is appropriate in this case for the following reasons: (1) Defendants have not provided names and physical addresses in their public contact information on their Amazon, Temu, and Wayfair storefronts; (2) Defendants appear to rely primarily on electronic communication to conduct their webstores; and (3) Defendants are based in China. (ECF No. 10, at 2–3.) Federal Rule of Civil Procedure 4(f) authorizes service of process on individuals in a foreign country in one of three ways: "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . or (3) by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

Ordinarily, the Hague Convention would govern service of process in this matter, because both the United States and China are signatories.[9] However, the Hague Convention contains an explicit exemption where the address of the foreign party to be served is unknown: "This Convention shall not apply where the address of the person to be served with the document is not known." 20 U.S.T. 361 (U.S.T. 1969). Because Defendants' addresses are unknown to Plaintiff and this Court, the Hague Convention does not apply to this action.

As to the remaining two options, "Rule 4(f) does not denote any hierarchy or preference of one method of service over another." *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015) (citation omitted). Instead, the decision to order alternative service of process rests "within the sound discretion of the court." *WhosHere, Inc. v. Orun*, No. 1:13-cv-00526 (TRJ), 2014 WL 670817, at *2 (E.D. Va. Feb. 20, 2014). Thus, the Court may order a method of service upon Defendant pursuant to Rule 4(f) even if Plaintiff has not yet exhausted the other mechanisms of service, so long as the method complies with the requirements of constitutional due process and is not prohibited by international agreement. *Id.* at *3.

"In order to fulfill due process requirements under Rule 4(f)(3), a court must approve a method of service that is 'reasonably calculated under all the circumstances' to give notice to defendant." *Enovative Techs.*, 622 F. App'x at 214 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). And courts have "routinely found that electronic service of process, including email process, complies with these requirements when a plaintiff can demonstrate that the defendant will likely receive the email and thus notice of the suit." *See, e.g., DAG Ammo Corp. v. KM Trade d.o.o.*, No. 3:21-cv-332 (DJN), 2021 WL 7933706, at *1–2

---

[9] *HCCH Members*, HCCH, https://www.hcch.net/en/states/hcch-members (last visited Oct. 24, 2025).

(E.D. Va. June 4, 2021) (concluding that service of process by email was reasonably calculated to provide notice when the parties regularly engaged in electronic business communications); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–17 (9th Cir. 2002) (finding service by email proper, in part, because it constituted the method of service most likely to reach the defendant).

Here, Plaintiff writes that "[d]espite not providing reliable physical contact information directly to consumers, the Defendants must generally utilize email so that they may communicate with their online marketplace platforms regarding issues related to the purchase and shipment of products." (ECF No. 10, at 3.) Furthermore, "it is necessary for sellers who operate entirely online to maintain contact with the Webstore host to ensure it is functioning and to communicate with customers electronically." (ECF No. 10, at 3.) As a result, Plaintiff asserts that "it is far more likely that the Defendants can be served electronically than through traditional service of process methods." (ECF No. 10, at 3.)

The Court agrees. Defendants operate what appear to be several online businesses. (*See* ECF 1-5; ECF 1-6.) To do so, Defendants must maintain methods for customers and online platforms where they sell their products (here, Amazon, Temu, and Wayfair) to contact their businesses. Thus, service of process to the email addresses that Defendants utilize to conduct their online business is likely to provide notice to Defendants and therefore complies with the requirements of constitutional due process. Further, the Court is not aware of any other international agreement between China and the United States that prohibits service by email. As a result, the Court will grant Plaintiff's Motion for Service of the Complaint by Email. (ECF No. 10.)

## IV. Conclusion

For the reasons articulated above, the Court will deny the TRO Motion. (ECF No. 5.) The Court will deny the Motion for Expedited Discovery. (ECF No. 7.) The Court will deny the Motion to Sever. (ECF No. 31.) The Court will grant the Motion for Service by Email. (ECF No. 9.) The Motions Hearing set for October 28, 2025 will be canceled.

An appropriate Order shall issue.

Date: 10/27/25
Richmond, Virginia

/s/ MHL
M. Hannah Lauck
United States District Judge